UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JILL BLACKMAN,

      Plaintiff,

v.                                **Case #: 4:12-CV-612**

THE FLORIDA DEPARTMENT OF
BUSINESS AND PROFESSIONAL REGULATION,

      Defendant.

_____/

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, STATEMENT
OF FACTS, AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

      Defendant, The Florida Department of Business and Professional Regulation ("DBPR"),

through counsel, requests this Court enter judgment in its favor pursuant to Fed. R. Civ. P. 56(b),

in that there are no genuine issues of material fact and DBPR is entitled to judgment as a matter

of law.  As grounds therefore, DBPR submits the following:

**STATEMENT OF FACTS**

      This is an action for alleged gender discrimination, based upon disparate wages, under 42

U.S.C. §2000e et seq., Chapter 760, Florida Statutes, and the Equal Pay Act, 29 U.S.C. § 206

("EPA").  (Plaintiff's Complaint, ¶¶ 1, 11, 19).

      Plaintiff Jill Blackman is currently employed with DBPR.  (*Id*. at ¶ 3).  Plaintiff began

working with DBPR in 1988 as a data entry operator.  (Plaintiff's Deposition, p. 15, ll. 1-6; p. 17,

ll. 16-17).  Plaintiff has worked in the Division of Pari-Mutuel Wagering ("PMW") the entire

time she has been with DBPR.  (*Id*. at p. 19, ll. 18-20).  Plaintiff has held various positions until

obtaining her current job as PMW's Bureau Chief of Operations, effective in 2006.  (*Id*. at p. 17,

ll. 20 through p. 18, l. 12).  Plaintiff worked thirteen years with DBPR before managing full time

employees in 2001.  (*Id*. at p. 20, ll. 17-22).  Plaintiff received a bachelor's degree in political science in 1998.  (*Id*. at p. 14, ll. 3-11).

At some point when Plaintiff was working as Chief of Operations, she visited a website established by the Governor that shows the salary amount of every state employee.  (*Id*. at p. 39, ll. 13-19).  Plaintiff claims that certain individuals had higher salaries than her.  (*Id*. at p. 39, l. 21 through p. 40, l. 16).  Plaintiff thereafter filed an administrative charge of discrimination.  (*Id*. at Exhibit 1).

Plaintiff alleges she is paid differently because of her gender and compares herself to Steven Kogan, Dewayne Baxley, John Karr, Joel White, and Royal Logan.  (*See*, *Id*. at p. 46, ll. 7-11; p. 75, ll. 3-10).  Other than the fact that Plaintiff is a woman, she admits having no evidence that any salary difference was intentionally or willfully gender based.  (*Id*. at p. 50, l. 20 through p. 51, l. 5).  Plaintiff cannot identify any DBPR employee that discriminated against her, and denies any discrimination by PMW's Director, and her immediate supervisor, the Deputy Director.  (*Id*. at p. 41, l. 23 through p. 42, l. 16; p. 51, ll. 7-20).  Plaintiff admits she has no direct evidence of discrimination; she heard no statements nor saw any documents indicating gender-based wage disparity.  (*Id*. at p. 44, ll. 9-24).  Plaintiff is unaware of any witnesses that can corroborate her discrimination allegations.  (*Id*. at p. 83, ll. 7-10).

In response to Plaintiff's charge of discrimination, DBPR pulled the data concerning its bureau chief salaries.  (Dillmore Affidavit, ¶ 16; Exhibit A).  The data shows DBPR's top two highest earning bureau chiefs are female. *Id*.  Five of the top seven highest earning bureau chiefs are female. *Id*.  There are four bureau chiefs in PMW: Plaintiff, Mr. Kogan, Mr. Baxley, and Carolyn Trabue.  (*Id*. at Exhibit A).  The highest earning bureau chief in PMW is Mrs. Trabue. (*Id*. at ¶ 17; Exhibit A).

At DBPR, Plaintiff considers herself comparable to the Chiefs of Auditing, Investigations, and Slots.  (Plaintiff's Deposition, p. 36, ll. 12-18).  Plaintiff admits that all these chiefs have their own specific skill sets.  (*See*, *Id*. at p. 37 through p. 39, l. 7).  Plaintiff does not possess the skill sets required to carry out the auditing, investigations, or slots duties performed by the other chiefs in PMW.  *Id*.  The different functional areas of PMW are unique and require employees, including the bureau chiefs, have different skills and responsibilities.  (Dillmore Affidavit, ¶¶ 6-13).

Plaintiff acknowledges that employees in the workplace can make different wages, and there are many reasons justifying the differences.  (Plaintiff's Deposition, p. 42, ll. 17-23).  Length of service can result in salary differences.  (*Id*. at p. 60, l. 23 through p. 61, ll. 4).  Different skill sets, backgrounds, qualifications, experience, and being at higher levels of management for different periods of time can all justify different salaries.  (*Id*. at p. 61, l. 5 through p. 62, l. 16; p. 64, ll. 12-16).

The male DBPR employees to which Plaintiff compares herself can be described as follows:

Royal Logan was the predecessor Chief of Operations.  (Dillmore Affidavit, ¶ 21).  He served as Chief of Operations for 13 years when he retired July 31, 2006. *Id*.  During 1994-1995, Mr. Logan was the Acting Director of PMW. *Id*.  Mr. Logan has a Bachelor's degree in Business Management and a Master's degree in Management and Supervision.  (*Id*. at ¶ 21; Exhibit J).

Steven Kogan is PMW's current Chief of Investigations.  (*Id*. at ¶ 29).  Before he became Chief in April of 2006, Mr. Kogan served as PMW's Investigator Supervisor for over two years.  *Id*.  When Mr. Kogan was promoted in 2006, he had over thirty-five years of investigative experience.  *Id*.  Mr. Kogan has worked for the State of Florida since 1993.  (*Id*. at Exhibit G).

Prior to his employment at DBPR, Mr. Kogan served as a Chief of Investigations at the Office of the Attorney General. *Id*.  Mr. Kogan has extensive experience regarding investigations. *Id*.

Dewayne Baxley is PMW's current Chief Auditing Officer and attained this position effective October 2007.  (*Id*. at Exhibit D).  Mr. Baxley has a Bachelor's degree in Accounting. (*Id*. at Exhibit I).  He began working for the State of Florida in 1990 in an accounting/auditing role. *Id*.  Mr. Baxley has been employed with DBPR for approximately twenty years, many of those years in a supervisory role. *Id*.

John Karr is employed in PMW as a Regional Program Administrator.  (*Id*. at Exhibit E). While the position name has changed, Mr. Karr has been in this management position since 1991.  (Dillmore Affidavit, ¶ 22).  Mr. Karr has been employed with the State of Florida since 1979.  (*Id*.).

Joel White was hired by DBPR's Secretary in 2011.  (Lawson Affidavit, ¶¶ 2, 4).  Mr. White was hired to perform special projects for the Secretary and PMW's Office of the Director. (*Id*. at ¶ 4; Dillmore Affidavit, ¶ 24).  The Secretary also utilizes Mr. White as an advisor on state government issues and to provide the Secretary with reports concerning PMW.  (Lawson Affidavit, ¶ 4).  Mr. White is technically under the Bureau of Operations, but he does not report to Plaintiff or anyone under her chain of command.  (Dillmore Affidavit, ¶ 24).  Mr. White has a law degree.  (Lawson Affidavit, ¶ 5).  He came to DBPR with experience in legislative affairs, and had a governmental consulting firm. *Id*.

Plaintiff's salary has been affected by the lack of legislative appropriations for state employee wages.  The Legislature did not appropriate an across-the-board raise for state workers in 2007, and had not done so through 2012.  Plaintiff, like many state employees, expected the cost of living increases were going to continue after her 2006 promotion, but they did not

because of the economy and budgetary restraints.  (Plaintiff's Deposition, p. 49, ll. 9-19).  Had

the increases occurred in 2007 through 2012, Plaintiff's salary would have been greater than it is.

(*Id*. at p. 49, ll. 16-19).

Plaintiff executed a Charge of Discrimination on June 16, 2011 (Plaintiff's deposition,

Exhibit 1), alleging gender discrimination, and thereafter pursued this action in October 2012.

(See, Plaintiff's Complaint).

## **MEMORANDUM OF LAW**

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that

there is no genuine issue of material fact, and that the moving party is entitled to judgment as a

matter of law.  Fed. R. Civ. P. 56(c*); Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  This

burden is a minimal one, and it does not require a moving party to support its motion with

affidavits or other materials negating the non-moving party's claim. *Celotex Corp. v. Catrett*,

477 U.S. at 323.  Rather, the burden on the moving party is discharged by "showing," or

otherwise pointing out to the district court that there is an absence of evidence to support the

non-moving party's case. *Id*.

 Once the initial burden is met by the moving party, the burden shifts to the non-moving

party to go beyond the pleadings and come forward with evidence establishing a genuine issue of

material fact. *Id*. at 324.  Specifically, the non-moving party has the burden to come forward

with evidence on each essential element of the claim sufficient to sustain a jury verdict. *Id*. at

322-323; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  A mere scintilla of

evidence in support of the plaintiff's position will be insufficient; there must be evidence on

which the jury could reasonably find for the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "Speculation does not create a genuine issue of material fact," and further, "bare and self-serving allegations when the plaintiff has no personal knowledge are inadequate to carry the plaintiff's burden on summary judgment."  *Ates-Jackson v. Verizon Wireless*, (VAW) LLC, 2013 WL 336510 *1 (11th Cir. 2013) (citations omitted).

The Eleventh Circuit has readily and consistently affirmed summary judgments in employment discrimination cases where the plaintiff fails to produce competent evidence that discrimination played a role in the employer's decision.  *See Chapman v. AI Transp.*, 229 F.3d 1012, 1025 (11th Cir. 2000) ("summary judgment is hardly unknown, or for that matter rare, in employment discrimination cases, more than 90 percent of which are resolved before trial . . . many of them on the basis of summary judgment for the defendant," *quoting Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th Cir. 1997)); *Raney v. Vinson Guard Service, Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997) (finding that in order to avoid summary judgment in an employment discrimination case, the plaintiff is "effectively required to put forth her entire case . . . to persuade the court that a reasonable fact finder could rule in plaintiff's favor."); *Earley v. Champion Int'l.*, 907 F.2d 1077, 1081 (11th Cir. 1990) ("Summary judgments for defendants are not rare in employment discrimination cases.").

In *Chapman*, the Eleventh Circuit reiterated its previous admonitions that a plaintiff cannot avoid summary judgment by merely questioning the wisdom of an employer's decision. The court stated, "[w]e are not in the business of adjudging whether employment decisions are prudent or fair."  *Chapman v. AI Transport*, 229 F.3d at 1030 (*quoting Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999)).  The Eleventh Circuit emphasized the following:

> Federal courts do not sit as a super-personnel department that re-examines an entity's business decisions.  No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [Title VII] does not interfere.  Rather, our inquiry is limited to whether the employer gave an honest explanation for its behavior.

*Id*. at 1030; *see also*, *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984).  While reasonable people may disagree about whether an employer acted correctly or fairly, "such potential disagreement does not, without more, create a basis to disbelieve an employer's explanation that it in fact based its decision" on its asserted nondiscriminatory reasons. *Id*.

## I. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S GENDER DISCRIMINATION CLAIM.

DBPR is entitled to summary judgment on Plaintiff's gender discrimination claim brought under 42 U.S.C. § 2000e et seq. and Chapter 760, Florida Statutes (Plaintiff's Complaint, Count I, ¶¶ 10-17).  Plaintiff is alleging disparate treatment in pay based upon her gender.  (See, Plaintiff's Complaint, ¶7).  When analyzing Plaintiff's gender discrimination claim, the burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies, as there is no direct evidence of gender discrimination in this case. (Plaintiff's deposition, p. 44, ll. 9-24).  Plaintiff bears the initial burden of proving a *prima facie* case.  To establish a *prima facie* case of wage discrimination, Plaintiff must show:  (1) she is a member of a protected class; (2) she received low wages; (3) similarly situated comparators outside her protected class received higher wages; and (4) she was qualified to receive the higher wage.  *See, e.g.*, *Sumerlin v. AmSouth Bank*, 242 Fed.Appx. 687, 690 (11th Cir. 2007).  If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to provide a legitimate

reason for such action.  If the employer provides a legitimate reason for the action, the burden shifts back to the plaintiff to show that the employer's motives were pretextual.

### A.  <u>Failure to Make a Prima Facie Case.</u>

Plaintiff fails to make a *prima facie* case and cannot do so.  Plaintiff cannot prove, and has no evidence supporting, element three identified above.  It is the plaintiff's burden to find and name other employees that are similarly situated in ***all aspects***.  *Alford v. Florida*, 390 F.Supp.2d 1236, 1249 (S.D. Fla. 2005) (emphasis added).  Plaintiff cannot prove that she was treated less favorably than a similarly situated employee outside her protected classification.

To determine whether employees are similarly-situated, "[t]he comparator must be nearly identical to the plaintiff."  *Wilson v. B/E Aero-space*, 376 F.3d 1079, 1091 (11th Cir. 2004) (Female employee in gender discrimination case failed to show that a similarly-situated male was treated more favorably.); *see also*, *Brown v. Sybase*, 287 F.Supp.2d 1330, 1343 (S.D. Fla. 2003) (Employees must be similar in *"all relevant aspects… not just one aspect"*).  "It is essential that *plaintiff identify* and offer proof regarding the actual individuals who plaintiff feels were similar to plaintiff – in terms of experience, conduct, disciplinary record, job qualifications, etc., - but were treated less harshly than plaintiff."  *Williams v. North Florida Reg'l Med. Ctr. Inc.*, 164 F.Appx. 896, 898 (11th Cir. 2006) (emphasis added).  It is not enough to show that an employer treated other employees better.  *Harris v. Fulton-Dekalb Hosp. Authority*, 255 F.Supp.2d 1347, 1368 (N.D. Ga. 2002).  The analysis requires the comparator(s) be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples and oranges. *Id*. (*citing Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)); *see also*, *Wilson v. B/E Aerospace, Inc.*, 376 F. 3d at 1091 (11th Cir. 2004); *Knight v. Baptist Hosp.*

*of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003); *Holifield v. Reno*, 115 F.3d 1555, 1562

(11th Cir. 1997).

Simply stated, Plaintiff has failed to identify any male DBPR employees that are

comparators under the *McDonnell Douglas* analytical framework.  Plaintiff is DBPR's Chief

Operations Officer in PMW.  (Plaintiff's Complaint, ¶ 6).  Plaintiff is considered a bureau chief.

(Plaintiff's Deposition, p. 36, ll. 10-11).  Plaintiff describes her job as follows:

> I oversee all of the occupational licensing for the division, the
> permit holder licensing, the annual operating date licenses, the card
> room licenses, the slot machine licenses, and the sample collection
> from the racing animals which goes from the actual collection of
> the samples, the chain of custody, individuals that collect those
> samples, ship them to the racing lab where they are analyzed for
> impermissible medication, any drug positives that occur are sent to
> me and is handled by my office.

(*Id.* at p. 35, ll. 10-20).  Plaintiff compares herself to the other bureau chiefs in PMW: the Chief

of Auditing, the Chief of Investigations, and the Chief of Slot Operations.  (*Id*. at p. 36, ll. 12-

24).  For purposes of this lawsuit, Plaintiff identifies the male bureau chiefs as comparators,

Steven Kogan (Chief of Investigations) and Dewayne Baxley (Chief of Auditing).  (*Id*. at p. 37,

ll. 15-18; Exhibit 1).  However, Plaintiff admits her position and the other chief positions in

PMW are dissimilar.  (*See*, *Id*. at p. 37, l. 3 through p. 39, l. 7).  Importantly, Plaintiff

acknowledges that she lacks the skill set and experience required to work in those other bureau

chief positions. *Id*.  Plaintiff admits that all four chiefs have their own skills.  (*Id*. at p. 38, ll. 15-

16).  Plaintiff thus admits that Mr. Kogan and Mr. Baxley are not comparators.

Plaintiff also suggests John Karr is a comparator, but the record shows that he is not a

comparator for purposes of the *McDonnell Douglas* analysis.  John Karr's position is under

Plaintiff's in the bureau of operations (Plaintiff's Deposition, Exhibit 2), but Plaintiff fails to

account for the experience and longevity of Mr. Karr that shows he is not a comparator.  Mr.

Karr is currently a Regional Program Administrator.  He has held this management-level position for twenty-two years, since 1991, started a career service position with the Department in 1986, and has worked for the State since 1979.  (Dillmore Affidavit, ¶ 22, Exhibit E).  Mr. Karr has been the recipient of the Legislature's annual raises over the course of this time, and at Mr. Karr's supervisory position in DBPR, this longevity and experience level has caused his salary to attain its current level.  (*See id.* at Exhibit E).  Mr. Karr's salary exceeds that of Bureau Chiefs Kogan and Baxley for the same reasons.  (*See id.* at Exhibits A, E).  Conversely, Plaintiff has not been at a comparably high level in the organization for as long as Mr. Karr, and in fact, only began managing others in 2001.  (Plaintiff's Deposition, p. 20, ll. 13-22).  Plaintiff's level of management was underneath that of Mr. Karr until her promotion in 2006 to the bureau chief level.

Plaintiff also suggests Joel White is a comparator, but the record shows otherwise.  Mr. White was hired by the current Secretary of DBPR, Ken Lawson, after Mr. Lawson became Secretary in 2011.  (Affidavit of Ken Lawson).  Secretary Lawson had known Mr. White for thirty years; they attended college and law school together.  When Secretary Lawson was appointed, he had not been in Tallahassee for twenty years, and this was the Secretary's first job in Florida State government.  Secretary Lawson hired Mr. White to work in the Division of Pari-Mutuel Wagering because he wanted someone he could trust and wanted Mr. White to report to the Secretary on the issues occurring in the division.  Secretary Lawson was aware that Mr. White graduated from law school, that he had legislative affairs experience, and that Mr. White had a government affairs consulting firm.  DBPR placed Mr. White in a vacant position in the Division of Pari-Mutuel Wagering.  Mr. White's duties in the division include assisting the Secretary in becoming knowledgeable on gaming issues, performing special projects for the

Secretary regarding gaming conditions throughout the country and anti-money laundering

projects, and serving as an unofficial advisor in many ways to the Secretary, including guidance

as to happenings concerning state government.  Secretary Lawson offered Mr. White $70,000.00

annually, and was based upon the Secretary considering what work Mr. White would do as the

Secretary's advisor, the fact that Mr. White was coming from the private sector, and considering

what was a fair salary for his responsibilities.  (*Id.*).

The record is clear that Plaintiff and Mr. White have completely different job duties.  In

fact, even though Plaintiff is technically over Mr. White in the organizational chart, Plaintiff has

no idea what Mr. White does in his position.  (Plaintiff's Deposition, p. 107, l. 18 through p. 108,

l. 9).  Mr. White does not report to Plaintiff.  (Dillmore Affidavit, ¶ 24).  The record is devoid of

any fact suggesting Plaintiff has a comparable level of education as Mr. White (law school), any

legislative affairs experience, any governmental consultant experience, or the personal attributes

Secretary Lawson was seeking in Mr. White as the Secretary took the reins of DBPR.  The two

are clearly not comparable.

Plaintiff's suggestion that her predecessor in the Chief of Operations position, Royal

Logan, is a comparator, also lacks the similarity required to make a *prima facie* case.  There is no

comparison for purposes of the *McDonnell Douglas* analysis.  First, Plaintiff is trying to compare

the salary of the prior Chief of Operations as he was leaving the position to the salary of Plaintiff

as she was entering the position.  Plaintiff herself acknowledges it is common in that situation for

the incoming person, who has no experience in the position, to be offered the position at a lower

salary.  (*See*, Plaintiff's Deposition, p. 48, ll. 1-7).  Plaintiff also fails to account for the

differences in experience between her and Mr. Logan.  Plaintiff's predecessor had more

managerial and supervisory experience than Plaintiff, and held the chief position for

approximately thirteen years before his departure.  Mr. Logan also received the benefit of the

yearly legislative raises in this position.  Additionally, the record shows, and Plaintiff fails to

account for, the State budget.  There was simply less money available to the State of Florida, as

evidenced by the fact that the Florida Legislature had not given state workers an annual raise

from 2007 through 2012.  Moreover, the record shows the trend during this period that persons

coming into positions were paid less than those leaving the positions.  (Dillmore Affidavit, ¶ 21).

This case is similar to *Sumerlin v. AmSouth Bank*, 242 Fed.Appx. 687 (11th Cir. 2007),

and DBPR should be afforded the same outcome as the *Sumerlin* employer.  In *Sumerlin*, the

plaintiff alleged a disparate pay claim based upon race.  The plaintiff, an African-American,

sought to compare herself to a white employee.  *Id*. at 690.  Both the plaintiff and the white

employee were payroll representatives, but the white employee was paid more. *Id*.  The Eleventh

Circuit Court of Appeals affirmed the district court's granting of summary judgment in favor of

the employer. *Id*.  In so doing, the *Sumerlin* court found the plaintiff and the white co-worker

were not similarly situated as the two workers did not perform the same types of tasks.  Even

though they were both payroll representatives, the plaintiff handled overtime and advanced pay

and entered data, while the co-worker balanced payroll accounts and verified employment. *Id*.

The Eleventh Circuit thus found the pay disparity was not discriminatory. *Id*.

This case is also similar to this Court's ruling in *Wooten v. Board of Trustees, Florida

A&M University*, 426 F.Supp.2d 1261 (N.D. Fla. 2006).  In *Wooten*, this Court found the

plaintiff's identified comparator in the wage disparity claim was not similarly situated, and in

fact, had a very different job from the plaintiff.  *Id*. at 1265.  This Court noted that Wooten ran a

learning development and evaluation center and did limited classroom teaching, while the

identified comparator was a full-time classroom teaching professor in the English Department.

*Id*.  In finding the English professor was not a comparator under the *McDonnell Douglas* framework, this Court noted, "[a] reasonable administrator might choose to pay an English professor (particularly one with this background) more than an LDEC director, or might not. But one would not expect two people performing these different jobs with these different histories to be paid the same, and reasonable people might differ on who should be paid more." *Id*. This identical analysis holds true when analyzing plaintiff with the individuals she has incorrectly identified as comparators.  The record clearly shows Plaintiff and the alleged comparators have uniquely different jobs that require different experience and skill sets.

Plaintiff lacks a *prima facie* case.  There is no evidence to satisfy the "nearly identical" standard of the Eleventh Circuit.  *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). Any attempt by Plaintiff to identify comparators in this case would be asking this Court to compare "apples and oranges."  Summary judgment is warranted for Plaintiff's failure to make a *prima facie* case.  See, e.g., *Ashmore v. Secretary, Dept. of Transp.*, 2013 WL 28433 *3-4 (11th Cir. 2013) (summary judgment affirmed finding lack of *prima facie* case where plaintiff failed to show co-workers similarly situated in all relevant aspects); *Lewis v. City of Kennesaw, Ga.*, 2013 WL 310077 *3 (11th Cir. 2013) (finding district court properly determined plaintiff failed to produce evidence of any similarly situated comparators).

### B.  Legitimate Reasons Regarding Wages.

If this Court finds Plaintiff states a *prima facie* case, DBPR nevertheless has met its burden of production as the record evidence establishes legitimate reasons regarding the wage differential for which Plaintiff complains.  *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983) (noting the defendant's burden of rebuttal is exceedingly light).  The reasons for the differences in wages are set forth in part in section I(A) above in explaining why

Plaintiff is not comparable to the individuals she identified, but can be set forth additionally as follows:

Experience is a legitimate, non-discriminatory reason for differences in pay.  *See*, *e.g.*, *Seldon v. Total System Services, Inc.*, 653 F.Supp.2d 1349, 1368-69 (M.D. Ga. 2009).  The record clearly establishes that Plaintiff's alleged comparators had quantitatively more experience than Plaintiff, for example, in regards to management/supervisory experience, such as employees Kogan, Baxley, Karr, and Logan.  Mr. Karr, for example, has had a decade more experience in his current management position than Plaintiff has in hers.  The same is true for Mr. Logan; that is, his departing salary reflected his years of experience in the chief position, versus the salary Plaintiff received as she started this position.  Plaintiff has no evidence of record justifying why she should be paid, from the start, the same salary that her predecessor was making when he left.  In fact, Plaintiff admits her pay should be less than Mr. Logan's as he exited the position. (Plaintiff's Deposition, p. 80, l. 21 through p. 81, l. 3); *see also*, *Givens v. Chambers*, 548 F.Supp.2d 1259, 1275 (M.D. Ala. 2008) (noting plaintiff's testimony that she is not claiming entitlement to same amount of salary weakens assertion that other employee is sufficiently similar to serve as a comparator).

Qualitative experience is also a legitimate reason for wage differences in this case.  For example, Mr. White's experience with state government affairs, his advisory abilities to the Secretary, and his analytical skills from his educational background justified his wage.  The record is clear that Plaintiff does not possess this experience.  Likewise, the extensive law enforcement and investigatory background of Mr. Kogan, spanning more than three decades, is a legitimate reason to justify his salary, as is Mr. Baxley's post-graduate degree in accounting that is directly related to his work.  Plaintiff obtained a degree in 1998, with a major in political

science (Plaintiff's Deposition, p. 14, ll. 3-6), hardly as relevant to her job as Mr. Baxley's degree is to his.[1]

Annual legislative increases in pay also represent a legitimate reason for differential pay, when looking at the alleged comparators such as Mr. Karr and Mr. Logan.  The legislatively appropriated raises allowed these individuals to earn well more than their initial appointment, and thus, longevity can legitimately create pay differences wholly unrelated to gender.  Paying an incoming employee the exact amount as another employee with a decade more experience provides no incentive for employee longevity.  Unfortunately for Plaintiff, the Legislature did not appropriate wage increases for six years (beginning the year after Plaintiff's promotion).  Had raises been appropriated, Plaintiff's salary would look more like Mr. Logan's pay when he left the agency.

The foregoing represents legitimate reasons for salary differences for which Plaintiff takes issue.  The facts set forth on the record and herein are certainly the types of reasons that would legitimately motivate an employer like DBPR to pay persons different wages.  Such reasons serve the basis for granting DBPR summary judgment in this matter.

### C. <u>Any Wage Differential for Which Plaintiff Takes Issue is not Pretextual.</u>

As evidenced above, DBPR articulated legitimate, nondiscriminatory reasons for pay differential, whereby any presumption of discrimination disappears. *Brooks v. County Comm'n of Jefferson County, Alabama*, 446 F.3d 1160, 1163 (11th Cir. 2006); *see*, *e.g.*, *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989).  In order for Plaintiff's case to survive, she must present "concrete evidence in the form of specific facts demonstrating that the defendant's

---

[1]  The fact that the parties are discussing, for example, law-enforcement experience versus auditing experience versus legislative affairs experience versus Plaintiff's experience in licensing shows, again, that the persons identified by Plaintiff are not in fact comparators, and further shows these discernible differences are legitimate reasons to pay people differently.

reason is only a mere pretext to discrimination." *Biggs v. State of Florida, Board of Regents*, 1998 WL 1069456, *3 (N.D. Fla. 1998) (*citing Davis v. AT&T*, 846 F.Supp. 967, 969 (M.D. Fla. 1993)).  The Eleventh Circuit has held that the pretextual standard requires that a plaintiff "*must produce sufficient evidence* to support an inference that the defendant-employer based its employment decision on an illegal criterion." *Id.* (*citing Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207 (11th Cir. 1997)(emphasis supplied)).  Plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997).  Specifically, "a reason is not pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" *Brooks v. County Comm'n of Jefferson County, Alabama*, 446 F.3d at 1163 (*citing St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).  Where an employer offers multiple reasons for the termination, a plaintiff must produce sufficient evidence for a reasonable fact finder to conclude that each reason is pretextual. *Chapman v. AI Transp.*, 229 F.3d at 1037.  If "the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason," or showing that the decision was based on erroneous facts. *Chapman*, 229 F.3d at 1030.  "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment." *Combs*, 106 F.3d at 1530.

     As set forth above, there were legitimate reasons that led to differences in salary at DBPR.  Plaintiff simply cannot prove these reasons are false.  The simple fact that Plaintiff

observed her salary is different than others at DBPR does not carry her burden of proving

pretext.  Plaintiff cannot identify one person who has discriminated against her in terms of wage

disparity.  (See, Plaintiff's deposition, p.41 l. 23 through p. 42, l. 16).  Plaintiff has not heard

anybody suggest her wage difference is gender-based, nor does Plaintiff have any documentation

to suggest gender discrimination.  (*Id*. at p. 44, ll. 9-24).  Plaintiff cannot identify any

Department employees that can corroborate Plaintiff's discrimination allegations.  (*Id*. at p. 83,

ll. 7-10).  Plaintiff admitted that many persons are involved in the determination of salary, yet

cannot identify who was involved regarding her salary determination or those of others she

questions, and importantly, Plaintiff denies that those involved in her rate determination

discriminated against her.  (*See*, *Id.* at p. 45; p. 49, l. 20 through p. 51, l. 20).  Plaintiff

specifically denies that her Division Director, Dave Roberts, or her Deputy Director, Joe

Dillmore, discriminated against her.  (*Id*. at p. 51, ll. 14-20).  Plaintiff does admit, however, that

employees can make different salaries, for a variety of different reasons.  (*Id*. at p. 42, ll. 17-23).

Further, the record evidence shows DBPR is not paying women less than men on the

basis of gender.  For example, there are four bureau chiefs in the Division of Pari-Mutuel

Wagering at DBPR.  Plaintiff conveniently avoids reference to the Chief of Slots, as the record

facts do not fit Plaintiff's narrative.  Mrs. Carolyn Trabue currently holds the Chief of Slots

position and earns approximately $76,000.00 annually.  (*See*, *e.g.*, Plaintiff's deposition, Exhibit

4).  Thus, the top earning bureau chief in PMW is female.  Moreover, when Plaintiff initially

raised her claim, DBPR gathered information regarding the salaries of bureau chiefs department-

wide.  The record shows that the top two earning bureau chiefs at DBPR are female, and five of

the top seven earning bureau chiefs are female.  (Dillmore Affidavit, Exhibit A).  There is simply

no evidence showing a gender-based wage disparity at DBPR.

In *Baldwin v. University of Texas*, 945 F.Supp 1022 (S.D. Texas 1996), the court noted, in granting summary judgment for the employer, that "Plaintiff's evidence here essentially amounts to speculation and conclusory statements of a plaintiff who feels she has been discriminated against." *Baldwin*, 945 F.Supp at 1034; *see also*, *Butler v. Albany International*, 273 F.Supp.2d 1278, 1288 (M.D. Ala. 2003) (finding unsubstantiated assertions of discrimination are not enough to withstand a motion for summary judgment) (*citing Celotex*, 477 U.S at 322). Plaintiff presents with the same deficiencies *sub judice*. Plaintiff reaches nothing more than baseless conclusions to suggest discrimination occurred, simply because she is paid a different wage than others, and ignoring the fact that the top earning bureau chiefs at DBPR are women. The record evidence shows DBPR has legitimate reasons related to the wages paid its employees that are clearly not pretext for discrimination.

Plaintiff fails to meet her burden of showing that DBPR's motives were pretextual, and cannot do so. Summary judgment is proper where Plaintiff fails to meet the burden-shifting analysis in *McDonnell Douglas Corp*. *Bicknell v. City of St. Petersburg*, 2006 WL 560167 at *13 (M.D. Fla. 2006).

## II. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S EQUAL PAY ACT CLAIM.

DBPR is entitled to summary judgment on the disparate pay claim brought by Plaintiff pursuant to the Equal Pay Act, 29 U.S.C. § 206(d), which provides, in part:

> No employer . . . shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishments at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work in jobs the performance of which requires equal skill, effort, and responsibility and which are performed under similar working conditions . . . .

Differences in wages do not violate the EPA where such differences result from: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) any other factor than sex." *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995) (quoting 29 U.S.C. § 206(d)(1)).

Under the EPA, the initial burden rests with the plaintiff to show "that an employer pays different wages to employees of opposite sexes 'for equal work done on jobs the performance of which requires equal skill, effort, and responsibility.'" *Schwartz v. Florida Bd. of Regents*, 807 F.2d 901, 907 (11th Cir. 1987) (*quoting Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)).; *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 590 (11th Cir. 1994). If Plaintiff establishes a *prima facie* case in this regard, the burden shifts to the employer to prove by a preponderance of the evidence that the pay differential is justified by one of the four statutory exceptions, and show the factor of sex provided no basis for the wage differential. *Mulhall*, 19 F.3d at 590 (citations omitted). If the employer establishes the pay disparity is justified by one or more statutory exception, the plaintiff must come forward with evidence showing the proffered reason for the disparity is actually a pretext for sex discrimination. *Schwartz v. Florida Bd. of Regents*, 954 F.2d 620, 623 (11th Cir. 1991) (per curiam).

## A.  Prima Facie Case Under the EPA.

DBPR is entitled to summary judgment on Plaintiff's EPA claim because Plaintiff cannot make a *prima facie* case of wage discrimination. To establish a *prima facie* case, Plaintiff must show the work she performed was "equal" to the comparators she identifies. Plaintiff cannot simply depend on a comparison of job titles or classification, "but on a comparative analysis of actual job requirements and performance." *Butler v. Albany International*, 273 F.Supp.2d at

1288 (citing 29 C.F.R. § 1620.13(e); *Pearce v. Wichita County, City of Wichita Falls, Tex., Hosp. Bd.*, 590 F.2d 128, 133 (5th Cir. 1979)[2]).

"The standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high." *Waters v. Turner, Wood, & Smith Ins. Agency*, 874 F.2d 797, 799 (11th Cir. 1989). Eleventh Circuit precedent provides:

> When Congress enacted the Equal Pay Act, it substituted the word "equal" for "comparable" to show that "the jobs involved must be virtually identical, that is, they would be very much alike or closely related to each other." The restrictions in the Act were meant "to apply only to jobs that are substantially identical or equal."

*Brennan v. City Stores, Inc.*, 479 F.2d 235, 238 (5th Cir. 1973) (citations omitted). Additionally, the precedent recognizes:

> [b]y substituting the term "equal work" for "comparable work," which was originally suggested, Congress manifested its intent to narrow the applicability of the Act. Congress intended to permit employers wide discretion in evaluating work for pay purposes.

*Waters v. Turner, Wood, & Smith Ins. Agency*, 874 F.2d at 799 (citations omitted). Indeed, the Eleventh Circuit provides that Plaintiff's burden of establishing a *prima facie* comparator under the EPA is a more difficult burden than the comparison required to support a Title VII claim. *See, e.g.*, *Horne v. Russell County Com'n*, 379 F.Supp.2d 1305, 1332 (M.D. Ala. 2005) (citation omitted).

Plaintiff cannot meet her burden of establishing a *prima facie* case under the EPA as related to the alleged comparators. The record establishes the alleged comparators' positions are dissimilar to Plaintiff's position. Simply put, an operations chief is not the same as an

---

[2] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981. <u>Bonner v. City of Prichard, Ala.</u>, 661 F.2d 1206, 1209 (11th Cir. 1981).

investigator, an auditor, a special projects/advisor to the Secretary, or regional manager.[3]  The

skills and qualifications needed to perform the jobs differ.  For example, the record clearly shows

Mr. Kogan's Chief of Investigations position is distinctly different from Plaintiff's duties.  In

*Mulhall v. Advance Sec., Inc.*, 19 F.3d 586 (11th Cir. 1994), the court found a *prima facie* case

was not made by the plaintiff where the comparator's job contained investigative components

that were not present in the plaintiff's position, especially where the plaintiff did not assert she

had any investigative skills.  *Id*. at 593.  The same facts are present *sub judice*, and the same

analysis can be used in determining the Plaintiff's job is dissimilar to the other comparators.  In

fact, Plaintiff acknowledges that she lacks the skills of her comparators.  (*See, e.g.*, Plaintiff's

Deposition, p. 37 through p. 39, l. 7).  Moreover, the record is devoid of any indication that

Plaintiff possesses the same skills or job requirements of Mr. White, certainly as it relates to the

special projects and advisory role to DBPR's Secretary as set forth in the record.  In fact,

Plaintiff acknowledges that she does not even know what Mr. White does for DBPR.  Plaintiff

has not, and cannot, meet her burden under the EPA.

### B.   The Differences in Pay Amongst DBPR Employees Satisfies the EPA's Statutory Exceptions.

An employer avoids liability under the EPA where the pay differences are based upon

any other factor than sex.  *Sterger v. General Elec. Co.*, 318 F.3d 1066, 1078 (11th Cir. 2003).

Here, the salary differences between Plaintiff and the alleged comparators are based upon factors

other than sex, therefore satisfying the statutory exception found in the EPA, and thus entitling

DBPR to summary judgment.  29 U.S.C. § 206(d)(1).

---

[3]  An example of EPA comparators is found in *Irby v. Bittick*, 44 F.3d 949 (11th 1995), where the court compared the plaintiff, a Sheriff's Deputy assigned to the investigations division, with two other deputies assigned to the same division.  It was clear that the plaintiff and the others were comparators; they were doing the same job.  The same cannot be said in this case.  The record shows the jobs asserted by Plaintiff are in fact dissimilar.

Relative experience is a valid "other than sex" factor under the EPA. *Irby v. Bittick*, 44 F.3d 949, 955 (11th Cir. 1995); *Horne v. Russell County Com'n*, 379 F.Supp.2d at 1333-34. Likewise, long-term experience in a single job is a valid exception. *Irby v. Bittick*, 44 F.3d at 957. Individual's training or abilities also are valid "other than sex" exceptions to the EPA. *Irby v. Bittick*, 44 F.3d at 955.

While the analysis under Title VII and the EPA are different, the facts showing DBPR is entitled to summary judgment are no different. In an effort to be brief, and bearing in mind the page limitations set by this Court for motions for summary judgment, DBPR requests this Court apply the facts and argument cited above in determining DBPR has proven the wages at issue were based upon factors other than sex. The record evidence is clear that the pay at issue was set based upon the relative experience of the employees. The record further proves that the alleged comparators had more experience than Plaintiff. For example, at retirement, Mr. Logan's salary reflected being in the position of Chief of Operations for thirteen years. Mr. Kogan had over three decades of investigatory experience when he was made Chief of Investigations; Mr. Baxley similarly had years of auditing and supervisory experience. Relative experience encompasses education, including Mr. Logan's Master's degree, Mr. Baxley's accounting degree, and the legal training and legislative affairs experience of Mr. White. The alleged comparators' experience is all highly relevant to their unique positions.

Moreover, the record proves pay issues raised by Plaintiff were also based on longevity, as opposed to sex. For example, the record is clear that Mr. Karr's salary is based on his state service in excess of thirty years, as well as longevity in a higher management position. The same holds true for Mr. Logan.

Further, a decline in revenue is a valid "other than sex" exception under the EPA.

*Brokaw v. Weiser Sec.*, 780 F.Supp.2d 1233, 1252 (S.D. Ala. 2011). The record shows that after

Plaintiff was promoted to Chief of Operations, there was a decline in State revenue, evidenced

by the lack of annual raise appropriations. This exception is not applicable to all the alleged

comparators, but is certainly valid in addressing why Plaintiff's wage is different than Mr.

Logan's wage, and similarly, to the wages of Mr. Karr. This exception is related to the longevity

exception identified above.

There simply is no evidence indicating sex was a factor in determining the salaries at

issue. In fact, Plaintiff admits she has no evidence in this regard. Summary judgment is

warranted.

### C. **Plaintiff Cannot Show Discriminatory Pretext in Pay.**

Plaintiff simply cannot show that the differences in pay were motivated by gender.

DBPR relies upon the argument raised and record facts identified in section I(C) above to

support that pretext is not only non-existent under the Title VII analysis, but is absent from the

EPA analysis as well. Again, Plaintiff has absolutely no proof, much less suggests, that anyone

based her salary, and that of the alleged comparators, on gender.

## CONCLUSION

Based upon the foregoing grounds and authorities, this Court should enter judgment in DBPR's favor as to all claims raised by Plaintiff in this action and find that DBPR did not discriminate against Plaintiff.

*s/Brian C. Keri*
BRIAN C. KERI (FBN 0087874)
P.O. Box 13599
Tallahassee, Florida 32317-3599
Telephone: (850) 297-2222
Attorney for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by CM/ECF service to Patrick R. Frank, Esquire, on August 9, 2013.

*s/Brian C. Keri*
Brian C. Keri